Your Honor, my name is Jose Robles, and I am the attorney for Alejandro Torres-Espinoza, and I'll try to address the issues. I would ask for 15 minutes for the main case and five for any rebuttal, if necessary. And what I was going to do also as co-counsel for Mr. Ricardo-Torres is file a supplement. And if it's necessary, I'll argue for 10 and give her five minutes. On your time, you just divide it as you choose. Are you giving five minutes to counsel for, I can't remember the name. Ricardo-Torres. Ricardo-Torres. Yes, Your Honor. Would the clerk please limit counsel presenting now to 15 total and leave five for Ricardo-Torres. Please proceed. Your Honor, the way I will approach is I will address the severance issue with respect to the co-defendant Garcia Mesa statements where he implicated the other co-defendants in his post-arrest statements, and then I will go into the promissory notes to that, and then I will address the prior bad acts. I had trouble seeing the Bruton error there because it looked to me as though there was plenty of striking of names so that there weren't any names, just references to other guys, and that there had to be other guys because of the nature of the crime, so it wasn't telling anything to the jury from the confession that they didn't already know. Okay. Well, in a way, when they do refer to the other guys, what Carlos Garcia Mesa was talking about, first he's mentioning El Negro and Luis, and then he goes into the other guys. Like, for example, on one of them where he says an individual picked him up from his hotel and took him over there, and when he went upstairs, he saw El Negro, he saw Luis, and then he saw the other guys together with the undocumented aliens. El Negro and Luis. Luis is dead. Yeah. He's dead. And El Negro was not a co-defendant. He's one of the co-defendants in this case, but he was not present. He's still at large. So he wasn't at trial. No. So the reference to them wasn't a reference to co-defendants who were being tried. No, Your Honor. When they refer to them and then they make the reference to the other guys, I think that more specifically points out to the people that are being tried, and I think that that's why it's more of a deserves brutal protection in the sense that you look to this in the sense of what the juror would think rather than the lawyers or anybody else. And I think after they look at their mentioning Luis and El Negro and the others, like, for example, when Garcia Meza says that they were all armed when they were in the hotel, that includes Luis El Negro and the people that are being tried. And I think that for that reason, you have a direct implication of the defendants and their inability to cross-examine them. Why couldn't it be other guys? I mean, why couldn't the defense be, well, evidently there was a big conspiracy with Luis and this other fellow and some other guys, but I'm not one of the guys. Nothing in the confession to say otherwise. Excuse me. In that question, do you mean, what do you mean when? I'm trying to figure out why the other guy necessarily implicates these defendants. Because those are, they're the focus of the whole case. They're the focus of being accused of. Well, it's a standard defense in a lot of criminal cases is the some other dude defense. It could be the some other dude defense, but here these were the dudes that were involved in. Well, they're not admitting that though, are they? They're not admitting that they were involved. They're just charged with being involved. They're charged with it. And as far as admissions with respect to other evidence, there is a contention that they are. I'm not getting across here. I didn't make my question clear. The brutal issue is the person who gives a confession but doesn't testify says that the defendant who's sitting at the defense table did it and the poor defendant who's sitting at the defense table is unfairly prejudiced because he doesn't get to cross-examine his accuser, the confessing co-defendant. The confessing co-defendant refuses to take the stand and the implicated defendant can't cross-examine him. But in this case, it looks to me like the confessing individual doesn't say that the person sitting at the defense table did it. So there's nothing to cross-examine. Well, he doesn't say, he doesn't name specifically. That's what I mean. He doesn't name specifically as imbrutant. I think this is more in the sense of it directs the attention by his testimony by saying they did it or we were armed, there were others. I think that implicates the person that's sitting at the defense table from the sense of the way he's telling or he's relating what had happened that particular day with the hostage-taking, with the arms, with holding the people against their will. Well, you basically have a gray issue. That is to say, by referring to this with a cipher, you guys are a blank. Your argument is it's obvious that the blank is the people sitting here in the courtroom. Let me ask you a somewhat different question, which is, what's the standard of review? The government argues that we review this alleged brutal error on clear error because the defense team went through the redactions that the government proposed and after the redactions were made, made no objection in the end to the admission of the statement. Do you agree with the government that this is a clear error review or not? I don't. I disagree that it is clear error. Because, for one, the motion for severance was litigated prior to the trial. But a severance issue is different from a brutal error. Now, the question here is, having decided not to sever, can this come in and what does it have to read like when it comes in? Your side participates in the redaction. Yeah. Do they, after the redaction is made, object to the admission of the redacted statement? I don't think there was any objection to the actual redacted statement. I think that the defense counsel during the trial participated in the redaction because they had no other choice when their motion to sever was denied. And I think for that reason, well, as far as severance, that was. Well, I understand the severance is a different motion. But as far as for as far as the confrontation issue, for that one, I really. But your argument is that the brutal objection was preserved. Okay. I understand the argument. And the government goes the other way. This just goes not to whether there was a violation, but rather the standard under which we review it. Okay. Thank you. On the other bad acts and the various prejudicial evidence that came in, my thought was, as I read the briefs on that, that probably some of it, if I had been the trial judge, I would not have let it in. But some of it might be within the trial judge's discretion. Not all trial judges agree. And even where it wasn't, it was hard to see any practical effect of it because the conceitedly admissible evidence was so overwhelming. Is there something here that wasn't overwhelming where it really might have been tilted? Well, as far as I don't think that when you look at whether there was error that was harmless beyond a reasonable doubt, you look at the importance of the evidence that's presented, like, for example, in these prior bad acts. It's only where it's constitutional error that it has to be harmless beyond a reasonable doubt. Okay. But go ahead. Well, anyway, and with the importance of presenting such testimony, you look at the weight of the evidence. From my client, who was Alejandro, he was there was evidence that he had rented room 22 at the Coconut Hotel. And the problem is you have other testimony that says that Luis wouldn't really describe or provide details about, you know, you go do this because we're going to take these aliens or we're going to go over there and hold them hostage or anything. He wouldn't trust his family is what the testimony was. So that when my client went and rented the room where the people were taken, I don't think there's any direct proof that shows that he did it with the intention of advancing the conspiracy to harbor these people. And you also look at whether there's any other type of evidence. You look at these, the Veracruz hostages, two testified that they had seen him go in there when there was a call made in response to more firearms. On the other hand, you have the undocumented people, Tiburcio and Saul, who said they never saw him there. Let me focus it a little more narrowly. Okay. When I used to do criminal defense, we used to denominate the defenses by name. There's the some other dude defense. That means all these bad things were done, but not by me. And there's the empty chair defense. All these bad things were done, but by somebody who's not charged today and who should have been. And what I'm looking for here is all these bad things were done, but not by me. And maybe they were all done by Luis, the dead guy, and by the other fellow who's a fugitive, never got caught. And it looks to me as though neither of those defenses are here. Instead, the defendants who were at the defense table were all thoroughly implicated. They could not really show that they weren't even there. And it looks as though they couldn't blame it all on Luis and the other guy, the fugitive. And so they were just stuck with arguing these fine points of what their intentions were. But it's so confusing factually, I may be totally wrong on that. So educate me if I am. That it's very confusing factually, I totally agree with you. The whole thing is so massive, but in trying to put it in simple little blocks to see what would happen, you have one group that's the Arminda group, I call it, is where she is in charge of smuggling the people from Mexico into the Sunland house where the kidnapping took place. At the same time, you have Jose Hernandez Torres who's coming in from North Carolina to take a load and who apparently knows Arminda. And when he's at the Motel 6, he gets kidnapped by Luis and El Negro and another individual who is identified as Andres. And then after that, these people are taken from the Sunland house, they're taken to the coconut hotel. There they start calling people, relatives for money. And then one of the phone calls ends up going to the smugglers house where Pedro is at. And that's how they make the contact to exchange the Gonzalez group. They go one time to go to a Pep Boys. They missed the connection. The second time they go prior to that, there's a big argument between the Arminda group and Luis. What happened there, whether they said, you know, we're going to go there and fight, nobody ever knows. They show up at the parking lot. And one of the undocumented people in the car says that the first shot they heard was from a van that was approaching them. And there was Cacho in the back, who was one of the people that was killed. So what precipitated over that, that's where you have the fight and the deaths. After that's done, they catch two of the people, Ricardo and Andres. And then by the statements of the witnesses, they go back to the coconut hotel and they find six of the people. And then they go to room 14. And that's where my client and another individual were arrested. And as you say, yeah, there's nothing where one can say, well, I wasn't there. And we can't really blame everything, but we have different varying conspiracies here and different acts. When my client arrived, did he arrive after the other people of the Gonzalez group was taken? I mean, that's that's unknown because you have conflicting testimony as to when he was first there. And there's other other witnesses that don't thoroughly identify or contradict some of the testimony that some of the people are given. Jose Torres, he was one of the smugglers and a government witness. And he had an interest not to ameliorate or lessen his participation in the whole thing. And he was the one that identifies my client as the person that took the shotgun. Yet you have another one that says, well, I never saw him with a gun. So that's why all these prior bad acts and all these are the statements from Mr. Garcia-Mesa were important and essential to try and connect to show that these people all were put together and participated in the whole thing. And that's what they did with the resulting verdict, which I think was improper. Roberts. Did you wish to reserve the rest of your time? Yes, Your Honor. Thank you, counsel. Thank you, Your Honors. Florence Grummer on behalf of Ricardo Torres-Espinoza. Our office submitted a supplemental brief on behalf of Ricardo, and I refer to everybody by their first names. It was done at trial. It was a standard practice. And in this case, I truly think of it as a supplemental brief. It demonstrates that the two main issues that Mr. Robles just argued to you were deeper, deeply, were intensified by other things that happened at trial. The things that particular that were to Ricardo was some evidence, some more 404 evidence, and that was admission of curriculum, each had by two expert witnesses who had just testified about their qualifications, and then 911 tapes that were sent in to the jury. Do we have any evidence that those tapes were listened to by the jury? No evidence that they were listened to. Okay. But it was discussed that they were sent in. And it's not anything that even should have been made available to the jury at all. They were highly inflammatory. It had to be people screaming. Obviously, this is a very emotional case, and it's not anything that even if should have gotten near the jury at all. Did the judge give the jury an order if you want to listen to these tapes, you have to alert the bailiff and we'll do it in court and that sort of thing so that we know that they weren't listened to? I believe he did. And going back to the Bruton argument, one of the arguments in our supplemental brief is regarding what happened at trial with one of the co-counsels there. We know Carlos' confession had many references to these guys, Luis El Negro and these guys, and what happened at trial was as he's cross-examining the officer who took the confession, he literally turns around and points to these guys. Why is that a problem? When I read that in the briefs, I was thinking, well, the absent co-defendant, not subject to cross, didn't point to anyone at the defense table. Instead, one of the lawyers did. But the judge tells the jury that what the lawyer says is not evidence. Well, exactly. But the jury is, when you have a case where it's not a situation where it's overwhelming evidence, evidence against these defendants, it's extremely important that things aren't brought in that gives violations like a Bruton violation. But it wasn't brought in. It's just the lawyer saying it. And the judge actually says it's not a violation, but the judge has to say it during the testimony of the officer. So it becomes part of it, the evidence that's shown to the jury. Well, the prosecutor also stands up there and says it was these guys. It's just argument. What am I missing? He's taking the testimony, which is he's taking the confession, which is the evidence, showing the jury that it's specifically these guys are the ones who are involved. But then no one gets to cross-examine Carlos and say, okay, now, really, is it these guys? What's going on here? And that's of particular importance to the 404B argument. And I know I'm going back and forth between the joint argument and my supplemental brief, but they really are an assignment. Because the problem with the evidence, the extrinsic evidence that the prosecutor submitted, the arrests with the guns and arrests being found in a stolen car, all that sort of thing, it's a guilt by association. And when you have an attorney from the defense and the confession saying these guys, and then this evidence that doesn't have anything to do with the case, it's highly prejudicial to the clients, and that's when it goes into the cumulative argument, that all of this was cumulative and it was in the proper trial and it should not, this sort of thing should not have been presented to the jury. I have about 15 seconds. Does anyone have some other questions? All right. Then I'm going to close. Thank you. Thank you, counsel. Thank you. Frank Leone. My name is Frank Leone and my client is Andres Espinoza-Torres. I will be very, very brief. I'd just like to echo the arguments that have already been made by counsel, but one of the questions that was asked was whether or not in this instance there was some defense that was affected by the fact that these prior bad acts come in. And our position is, with regard to the prior bad acts alleged as to Andres Torres, is that there was, because the portrayal, particularly with those bad acts that are outside of the charged indictment, are that these fellows are in the United States illegal, they are running around carrying arms, and that in particular, for example, one of the witnesses testified that the people who are prohibited possessors include felons, include domestic violence defendants, et cetera. And the problem is this. It would have been, I think, a fair inference from the evidence that Andres Espinoza acted in self-defense at the Pep Boys site when he saw or heard a shot and Cacho came out from between two cars and was firing at him or pointing a weapon in his direction, and ultimately there's also a van that comes out there. But when the jury is trying to assess the statement made and introduced with regard to Andres, but all they've heard up until that time is evidence of all these other bad acts and how this person is a bad character to begin with, it's difficult, I submit to the Court, for the jury to, if you will, give the defendant a fair charge because it's already been portrayed, not for what he's charged with, but for other things that he's not charged with. Roberts. Did he present a self-defense? He presented a self-defense through the statement that was presented to the jury. He said, in essence, what happened is I got out, I saw a man coming towards me. He had a firearm. He yelled at me. I yelled back at him. And we ultimately ended up firing at each other. And I think it would have been, I think, in that instance, fairly possible for the defendant to have acted in self-defense when he shot. And also, in fact, as I say, there was other gunplay at the pet place. But my point is this. When the jury is presented with evidence that these people are in the country illegally, that they're carrying firearms, obviously items and evidence that is not charged in the indictment, it's very difficult for a defendant to get a fair trial on the charges that are made when the jury already has a view that this is an outlaw. And I think that's what the problem is with admission of all these prior bad acts. That's what deprives the defendant of a fair trial. He ought to be on trial only for what he's charged with, not for other bad acts that have never been prosecuted or charged or constitute part of the charges that he's being tried on. Thank you. Thank you, Your Honor. Good afternoon. Joan Lufthansaus here on behalf of the United States. I'd like to begin with the 404B argument. With regard to the last argument that was just made, Defendant Andres was in fact charged with being an illegal alien in possession of a firearm, as was Defendant Ricardo. Both of them had firearms at the time of the shootout at Pep Boys. So the evidence, part of the 404B evidence, that being the prior arrests, was offered to show their knowledge of the fact that they had guns, that they were not permitted to have guns, and also to show their intent to carry and use guns. Specifically, the April 5th arrest went to Defendant Antonio. When that evidence was admitted, it was admitted with a limiting instruction that it was to go only to Defendant Antonio, and it was admitted by the district court to prove knowledge and intent to possess firearms. Counsel, on some of the illegal evidence, I had no trouble reaching that same view. There were a couple of things that concern me about the trial. The biggest one was that it went for 32 days. I just couldn't imagine why a trial would go that long. And then I looked at some of the things coming in, like 9-11 tapes, people hysterically calling the police and saying there's shooting going on. I don't know. What probative value does it have? If I can say two things with regard to that, Your Honor. First of all, the 32 days, there were 10 alien witnesses who testified through Spanish, and so it was a very laborious process to get the testimony interpreted, get translated. There were sometimes discussions with regard to what a particular word meant, and at times that took up literally half an hour. I tried cases in Spanish and in Anchorage. I don't think I ever had one that ran a full week. I just offered that for the word, just page after page of translations and arguments with regard to translations. But in addition, the 9-11 tapes, those tapes, while they were admitted into evidence, were never played. The transcripts, while they were admitted into evidence, and there's no objection to the admission of those transcripts, they were never read. They were never referred to other than to lay foundation for their admission. So I think that's the reason. What about the evidence that people were smoking dope in the motel room? Your Honor, that was offered for two purposes. First of all, as the Court is probably aware from reading the briefs, all of these defendants were related. They have not only similar names, but they look very similar. There's two sets of brothers, and they look practically identical to one another. So one of the ways in which none of the alien witnesses, the hostages, identified defendants by name. They didn't know their names because names weren't used while they were held hostage over the 20 hours. I'm sorry. They identified these people by perhaps the facial characteristics. Someone had a mole or a wart. Someone was darker than another individual was. They also identified them by the fact that some of them used drugs. They testified to that. Four of the hostage witnesses testified to drug use. Hostage Hoell testified that Alejandro and El Negro were both using drugs. Tiburcio testified that he saw El Negro using drugs and that El Negro became more   He testified that he saw El Negro near the hotel room during the day and that El Negro had struck one of the hostages during the time that he was taking drugs. Enriqueta testified that she saw El Negro on his drone. Roberts. So you're saying the purpose of the smoking dope in the hotel room testimony was so that the aliens could identify which defendant was which? This is the one who was smoking. This is the one who wasn't? It was for that purpose. In addition to because the court specifically found that it was for identity purposes. The court further found that it was an integral and interrelated, intertwined portion of the crime because they were charged with 924C counts, which required an act or threat of violence against the hostages. Let us focus on the Williams case, which is what you rely upon to say that the testimony regarding the usage of the drugs was inextricably intertwined. Right. In the Williams case, the evidence was repeated beatings of the victims and that was used to control them. Here the link seems to be much more attenuated. Even if the hostages were apprehensive about the drug use, how was it relevant to show that that was part of the hostage taking? It wasn't the hostage taking. It was the holding for ransom and detention portion because there were threats. Well, not the actual taking, but part of the crime.  I could see someone, there's many kinds of drugs, prescription, non-prescription, whatever, recreational. I don't see how it's so directly related to their being able to affect the crime, which is what Williams said. Right. What Williams said is even though it doesn't go to an element of the crime, it was how Mr. Williams kept control over the girls who were the prostitutes working for him. In this case, the drug use combined with the possession of the guns were what permitted the defendants to hold, to first take. Weren't the guns enough? Perhaps they would have been. But in this case, we have the additional fear of the hostages because they saw I know they testified to that. I know six or so of them did. But it seems like that evidence, that it was so consistent that so many of them testified that they added to their fear, it just seemed like something that might have been put in their minds. Because if you've got a gun on you, you're not going to move. What does the drug have to do with it? That it made them even more apprehensive as the time went on. But I'd submit that even if this Court were to find that there was some error in the admission of that evidence, that clearly any error was harmless, more probably than not harmless, if the Court looks at the conspiracy evidence that the government has set forth in its brief at pages 11 to, I believe it's 29, that evidence is taken solely from uncontroverted, uncontested evidence. It does not include any of the challenged, what the defense purports to be 404B evidence, or any of the statement of Defendant Carlos Garcia Meza. It is all uncontroverted evidence. That, in conjunction with the fact that each of the other four defendants made admissions, post-arrest admissions, to a law enforcement officer, and a law enforcement officer testified to all of those admissions, together with the conspiracy evidence was overwhelming evidence of the guilt of the defendants. And so any error in the admission of some of the drug evidence, if you were to find it to be not intertwined, was harmless. I'd also submit that or does the Court have any more questions regarding any of the 404B evidence specific? Well, I guess, let's see, I did have one other question. With respect to Luis and Ricardo, their prior, I guess, charge or conviction of driving a stolen car carrying a weapon, that was again admitted under 404B to show knowledge of the 924C charge. Again, I find it hard that having the stolen car, the fact that the, to see how having a stolen car and a stolen gun was relevant to 924C at all. And again, if that's there, I guess your position is that was harmless. I do find that troubling as well. Well, I'd like to point out to the Court, though, and I'm not sure that this was clear in the brief, that while the car that Luis, Andres, and Ricardo were in was stolen, as was one of the guns stolen in a burglary, the van was stolen from Jose on the day of this event, of the hostage taking. So the defendants were again in a stolen vehicle. They were also in possession of stolen cell phones. So the evidence regarding the May 21 arrest showed criminal association between three of the defendants or three of the individuals who then were involved in the hostage taking on the 14th of August. It shows, and this is in light of the fact that Defendant Ricardo's defense was mere presence. I was in the wrong place at the wrong time. I didn't know what was going on. I wasn't aware of what Luis was doing. And then we have Defendant Andres, who was also involved in that May 21 event, and he said, you know, you need to compartmentalize the evidence because I wasn't involved in everything. You need to see who the witnesses said actually did the particular acts. So again, you've got the defendants who are distancing themselves from Luis and from El Negro because we had El Negro and Luis dead to rights. They're trying to distance themselves. And these prior acts show, no, you have these same defendants joining together at the beginning of the conspiracy, conspiring together, associating together, committing similar acts together, and that's relevant to their, yes, they were involved on the 14th of August. So it goes to their knowledge. I might be confusing the facts because the participants slip around in their various vehicles and so on. Who was driving the minivan? The Luis. Luis was driving the minivan. You're talking about when they went to the Sunland House to pick up to hostage take? Luis was driving the van at that time. And the van was in the possession of the defendants at various times then. Is this right? I thought Luis was driving a Honda. I thought someone else was driving the minivan at the Pep Boys. There were two vans. Oh, that's my problem. Okay. There was a van. Got it. And so when you're talking about the van that was stolen, you're talking about the van that Luis was driving, not the van that shows up at the Pep Boys? Correct. Got it. Okay. Luis and Andres stole the van from Jose and then went and hostage took. No, I understand that because I was trying to figure out the relevance of prior thefts compared to the minivan, but I thought you were referring to the minivan that showed up at the Pep Boys. That minivan was the smuggling group. Got it. Okay. I'm all right. Okay. If there are no other questions regarding the 404B, I'd like to go to the Confrontation Clause. Absolutely. One of the difficulties in addressing the Confrontation Clause issue was the failure of the defendants to particularize which statements they were complaining about. Because, as the Court has already mentioned, there was a redaction of the 72-page statement. Both parties participated in that redaction. Ultimately, defendants wanted more redaction than the government was willing to do. In a compromise, the government agreed to make all the additional redaction and the defendants agreed to not object to the manner in which the government intended to introduce the testimony of Agent Roscoe. So the government submits the plain error review. Is that correct? I don't get that. It seems to me that if the defendant makes a motion for severance and loses, he's preserved the issue of severance. Absolutely. And then when he takes his best shot and works out an acceptable compromise on the redaction of the I suppose he's not allowed to argue about whether the redaction is sufficient. But I can't see why he can't continue to make his Bruton argument since he moved and lost on the Bruton issue, the severance. He can continue to make it, but I believe it's plain error because he got all the redactions that he wanted. But when you move for severance, what you want is severance. So if you don't get your severance, the fact that you get redactions doesn't necessarily vitiate your demand for severance. I don't know if I think plain error would be the standard of review only if what they were claiming was the redaction was insufficient. I'm not sure that I agree, because there were basically the severance motion was on a couple of grounds, actually, because it wasn't stated. You're saying once they get it redacted satisfactorily, it moves out the severance. And I don't see why it does. I'm not saying it moves out the severance. I'm saying it makes the Bruton issue plain error review. He still gets, whether it's abuse of discretion. I recall Bruton, it was about severance, wasn't it? Is my recollection wrong? Confrontation clause. Yeah, but wasn't the context of the confrontation clause dispute whether the code defendant is entitled to a severance? That may be correct. Is my memory wrong? I won't challenge your memory. Assuming that's true, then, I would submit that even under any standard of review, there was no error in the admission of the statements of Defendant Carlos Garcia-Meza. And if the Court looks on the other side of the line, there is no error. So you're saying you think it is plain error review, but you don't need plain error review, because even if it's subjected to error, there isn't any. Yes, correct. And I say that because if the Court, what the government did in its brief was go through and take out the statements that it believed defense was referring to when they were objecting to the Carlos Garcia-Meza statements. Those are cited at pages 30 to 33 of the government's brief. When you break down the actual statements and the testimony of the agent as to what Garcia-Meza said, there were only a number of statements that referenced anyone. And first of all, these were not redactions. They were actual verbatim statements of Garcia-Meza in which he identified no one. And that's why the government cited the Valdez case out of the Eighth Circuit as being most closely related to this case, because in Valdez, the defendant or the declarant had refused to identify his accomplices. And at trial, the officer who was introducing the statements of Valdez or of the defendant or the co-defendant said he refused to identify his accomplice. And then the agent or officer went on to testify as to what statements were made that the defendant or the, I'm sorry, the declarant took particular actions with someone. Similarly, in this case, Garcia-Meza did not identify his accomplices in the challenged portions. Verbatim, he said either they, someone, and individual. That does not identify anyone. It's not facially incriminatory. And in this case. Yeah, but in the context here, I mean, this was a close question for me, because under Gray, it's not enough to say, well, Joe and blank, when it's obvious who blank is referring to. It seems not too hard to figure out who the they or the someone is in this case. But isn't that because the ten alien witnesses have already, hostages have testified and said, this is what happened, this is what happened, this is what happened. We have the officers testifying, these are the people that we arrested. Yeah, this is a somewhat different question for you, and it's not quite going to the question in front of us. Why did you put that in? I mean, you're, you have a lot of other evidence. Why are you pushing it and putting that one in when you knew you had a brutal issue? I, I can't speak to that. I don't. Were you at trial or are you just. No, I'm appellate counsel. Okay. But I submit to the Court. Take, for example, one of the statements. We have the officer saying that I went and I interviewed Mr. Garcia Meza, and I asked him if he received, in quotes, a visit of sorts. The response was, yes. You're going to watch people for Luis, or you're going to help him take them, he said, because there are a lot of people. That's not facially incriminatory. The only way that that's incriminatory is if you link it up with other evidence at trial, that being the testimony of the alien hostages as to who was present and who did what. And I think that under Gray, where Gray has approved of saying me and some other guys, this is similar to me and some other guys. But the jury's got to be just a bunch of dimwits if they don't connect the dots there. Well, yes and no. And I say that because clearly there were people in the courtroom who were defendants, but there was also reference during the testimony to other people, for example, Felipe. Now, Felipe was not a charged defendant, but Felipe was someone who Luis's father testified, Luis was out ripping people off with. So Felipe is a potential that could have been someone that was involved. So while it is possible that the jury would say, yes, the people that are being referred to are the defendants who are on trial, there were people like Irene, like Felipe, who were also testified about that were not defendants that could have been the someone who went to the room to pick up. So just two quick questions about, are you arguing that this is not error under Gray? We need only look to Gray v. Maryland to complete that analysis, or is this an extension of Gray? Your argument, is your position an extension of Gray? Or maybe a clarification would be. I would submit it's more of a clarification of Gray because, again, in Gray we had a written statement and you've got deleted, deleted, deleted. I'm sorry. And I believe actually what they did was they testified to it as me, deleted, deleted. So we didn't have that. So we're a little bit different. We're more like Valdez, as I said, where we didn't identify. Is that Valdez or Edwards? When you talk about the Eighth Circuit. Maybe I might be. I have an Eighth Circuit case here that's called Edwards that says remarkably the same thing. No, well, Edwards is also, we also rely strongly on Edwards. But it is Valdez where Valdez would not identify as accomplice in the statement. And the Eighth Circuit said where there's no redaction necessary because the codefendant's name was never mentioned, the inquiry becomes does the statement incriminate defendants on its face. And the government submits that. If you look at the statements, the actual statements at pages 30 to 33, where the government has them in quotes, where they're not redactions, they're just mention of someone, an individual, a person, that those are not incriminatory on their face. And if you analogize to Gray and to Valdez and to Edwards, there was no brute merit in this case, regardless of the standard of review. But, again, I'd also refer the Court back. Should you find that there's error, again, look to the conspiracy portion of the statement of facts which contains no challenged evidence. There's overwhelming evidence of the defendant's guilt, particularly when you look at the fact that each of these other four defendants made a statement, post-arrest statement, and that was admitted without objection at trial. So they're complaining about the admission of one defendant's statement, but, meanwhile, their own statements were all admitted against them as well. And all of those statements connect them to conspiracy. Roberts. Thank you, counsel. Is there any time reserved for the appellants? Real quick, Your Honor. Looking at the nature of proceedings in my brief, I noticed that on page 6, it says appellant Ricardo Torres Espinoza had argued for a new trial and also he said that there was a violation as far as the cross-examination of co-appellant counsel with agent Angel Roscon that violated the Sixth Amendment. And it's in the clerk's record document 330. I don't have my excerpt to explain whether that was in the form of a motion or the If anything, something would be found there as far as an objection on the Sixth Amendment. And then also, as far as the drug use testimony that was used for identification purposes, at trial the government was arguing that the drug use was submitted to test the reliability of the post-arrest statements made by the defendants. And I think that the reason there may not have been any objections to the submission is that they were mostly denying some of the participation in the events, although some of them would admit to renting or doing something else. But I think that that may have been the reason. But the drug use was submitted to test, I guess, the reliability of their statements. Did the Court make a finding that the evidence of drug usage was relevant to prove identity? No. That's the first time I've heard that. I was looking at the testimony or some of the notes relating to that, and none of the Veracruz group that were in Room 22 identify, as far as my client, as the one that was smoking the dope, was the one that was bringing in the shotgun or anything of that nature. But the Court just, they ruled that it was based on the subject of the drug use was essential for the subject to judge the subjective belief of the people that were taken hostage, but it made no ruling as far as identification or anything of that nature. And other than that, I would just submit the brief if there are any other questions. Thank you, Counsel. Thank you. United States v. Torres-Espinoza, Ed Al, is submitted. Thank you.
judges: Kleinfeld, Wardlaw, W Fletcher